IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| LISA MARLENE STOKES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 315-008 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Lisa Marlene Stokes ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision be **REVERSED** and the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

**I.     BACKGROUND**

Plaintiff is a fifty-one year old female born June 8, 1964, with a ninth grade education and no past relevant work. R. 245, 48, 68. Plaintiff applied for SSI on February 14, 2011, alleging a disability onset date of September 1, 2002. Tr. ("R."), p. 117, 245. The Social

Security Administration denied Plaintiff's application initially, R. 95-98, and on reconsideration, R. 133-138. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on May 16, 2013. R. 39. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and from Mark Leaptrod, a Vocational Expert ("VE"). R. 40. On June 27, 2013, the ALJ issued an unfavorable decision. R. 33.

Applying the five-step sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful employment since February 14, 2011, the application date (20 C.F.R. § 416.971 *et seq.*).

2. The claimant has the following severe impairments: Anxiety/Depression and Borderline Intellectual Functioning (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) except the claimant is limited to lifting/carrying twenty pounds both frequently and on occasion. She is limited to frequent handling and fingering. The claimant is capable of frequent interaction with the public, coworkers, and supervisors. She is able to perform short cycle repetitive work at specific vocational preparation levels of 1-2.

5. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR § 416.969 and 416.969(a)).

R. 23-32.

On December 2, 2014, the Appeals Council denied Plaintiff's request for review, R. 1-3,

and the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of the adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because: (1) the ALJ improperly concluded that Plaintiff did not meet Listing 12.05; (2) the ALJ erred in finding that Plaintiff's carpal tunnel syndrome was not a medically determinable impairment; (3) the RFC is not supported by substantial evidence; and (4) the ALJ erred in relying on the VE's testimony. (See doc. no. 12 ("Pl.'s Br.").) The Commissioner maintains that the ALJ's decision is supported by substantial evidence and should therefore be affirmed. (See doc. no. 13 ("Comm'r's Br.").)

## II.    STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is

"more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. A Claimant's Burden at Step Two of the Sequential Process Is Mild, and Only the Most Trivial Impairments May Be Rejected.

Plaintiff argues the ALJ erred at step two of the sequential process by failing to consider her Carpel Tunnel Syndrome ("CTS") a "severe" impairment. Pl.'s Br. 12. Indeed, the ALJ did not merely characterize Plaintiff's CTS as a non-severe impairment, but characterized it as a

4

"non-medically determinable impairment," claiming the only diagnosis of CTS came from Dr. Marvin Long, and was based on Plaintiff's subjective complaints. R. 24. Plaintiff argues Dr. Long, Dr. A. James Giannini, and Dr. Louis Jacobs all diagnosed her with CTS, and her CTS prevents her from performing basic work activities. Pl.'s Br. 13. Even the Commissioner admits "Plaintiff correctly notes that a psychiatrist examined Plaintiff's arm, found positive Tinel's sign, and diagnosed bilateral carpal tunnel syndrome." Comm'r's Br. 10. However, the Commissioner argues that diagnosis of a condition alone does not mean that such a condition interferes with Plaintiff's ability to perform basic work activities, and any error was, at most, harmless. Id.

A severe impairment is one which significantly limits one's ability to perform "basic work activities." 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). Examples include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(4) Responding appropriately to supervision, co-workers and usual work situations; and

(5) Dealing with changes in a routine work setting.

Id.

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that such impairment significantly affects her ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (*per curiam*). At the second step of the sequential evaluation process:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. § 404.1520(c). However, the severity test at step two of the sequential process is designed to screen out only clearly groundless claims. Stratton v. Bowen, 827 F.2d 1447, 1452 (11th Cir. 1987) (citing Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985) for the proposition that the severity test has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working").

In fact, the Eleventh Circuit describes step two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (*per curiam*) (citing Brady, 724 F.2d 914). Under this test:

> An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

Id. As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. The claimant's burden is "mild," id., and "the claimant need only show that an abnormality's effect is not so minimal that it would not interfere with [her] ability to work irrespective of age, education, or work experience." Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986) (*per*

*curiam*).

### B. The ALJ's Severity Determination as to Plaintiff's Carpal Tunnel Syndrome is Not Supported by Substantial Evidence.

Plaintiff consistently complained of her CTS at the hearing. R. 55. Plaintiff explained her CTS affected her hands and severely limited her ability to clean, and because of her hand pain, she "broke nearly every one of [her] dishes." Id. Plaintiff alleged her hands would frequently go numb, with the numbness lasting fifteen to twenty minutes. R. 66. Plaintiff explained the numbness would sometimes return depending on whether she rested her hands, and this required the use of wrist braces at night. R. 55, 66.

The ALJ discredited Plaintiff's CTS as a non-medically determinable impairment, claiming Plaintiff was only diagnosed once with CTS by state consultative examiner Dr. Long, who reported the diagnosis based on Plaintiff's report of the condition. R. 24. Contrary to the ALJ's finding, Plaintiff was diagnosed with CTS three times. On November 3, 2009, Dr. Long diagnosed Plaintiff with CTS in both wrists, but noted this diagnosis was "reported by client." R. 405. During a psychiatric evaluation on July 18, 2011, Dr. Louis Jacobs diagnosed Plaintiff with CTS along with major depressive disorder, hypertension, NIDDM, gall bladder disease, and exogenous obesity. R. 496-97. On August 17, 2011, Dr. A. James Giannini examined Plaintiff's wrists and her ability to execute a repetitive motor sequence. R. 538. Dr. Giannini determined Plaintiff exhibited Tinel's sign bilaterally between her wrist and elbows, and diagnosed Plaintiff with CTS. Id.

The Commissioner argues the ALJ's failure to recognize Plaintiff's CTS diagnoses is excusable as harmless error. Comm'r's Br. 10. She notes, among other things, that a diagnosis

7

alone, without a showing of how the impairment affects a claimant's ability to do basic work activities, is not enough to establish the impairment is severe. Id. Here, Plaintiff's testimony regarding her hand numbness and use of wrist braces demonstrate the influence her CTS has on her ability to do basic work activities, and Plaintiff has met her "mild" burden at step two. McDaniel, 800 F.2d at 1031. The Commissioner's attempt to reweigh the medical evidence by justifying the ALJ's decision to ignore Drs. Jacobs and Giannini's diagnoses of CTS is improper. (Doc. no. 10, p. 2.) Indeed, the Court's "limited review [of the record] precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*) (citing Bloodsworth, 703 F.2d at 1239). Therefore, whatever the merits of the Commissioner's argument, the critical fact is that her argument was not made by the ALJ at step two, and the Court declines this invitation to conduct a *de novo* review of the evidence with regard to Plaintiff's CTS, as such determination is for the ALJ, not this Court, to make in the first instance. See Martin v. Heckler, 748 F.2d 1027, 1031 (5th Cir. 1984) (noting it to be "inappropriate on judicial review for the first time to apply administrative criteria not themselves considered by the [Commissioner]").

### C. The ALJ's RFC Analysis is Not Supported by Substantial Evidence.

Because the ALJ failed to account for Plaintiff's diagnoses of CTS from Drs. Jacobs and Giannini, the ALJ's RFC analysis is likewise not supported by substantial evidence. At step four, the ALJ found Plaintiff had the RFC to perform light work, was able to carry twenty pounds both frequently and on occasion, and was limited to frequent handling and fingering. R. 26. The Commissioner asserts this RFC finding is supported by substantial evidence because the ALJ gave Plaintiff "the benefit of the doubt" by limiting Plaintiff to no more than frequent

handling and fingering. Comm'r's Br. 11. The Court disagrees with this characterization of the ALJ's RFC, and finds the ALJ's failure to consider Drs. Giannini and Jacobs's CTS diagnoses has resulted in a RFC finding unsupported by substantial evidence.

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012). Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (citing 20 C.F.R. § 404.1569a(b)-(d)). An RFC assessment must be based on all of the relevant evidence in the case record including medical history, reports of daily activities, lay evidence, medical source statements, etc. See SSR 96-8p; 20 C.F.R. § 404.1545(a)(3).

In support of his RFC determination, the ALJ again cited the lack of "any objective

9

medical test revealing the claimant with [CTS] . . . ." R. 27. The ALJ again asserted there was "no diagnosis or treatment for [Plaintiff's] alleged hand numbness or carpal tunnel syndrome by any medical provider." R. 31. The ALJ's omission of Drs. Jacobs and Giannini's CTS diagnoses, demonstrates the RFC is not supported by substantial evidence because the ALJ failed to consider all of the relevant medical evidence before reaching his RFC finding. See 20 C.F.R. § 404.1545(a)(3). Accordingly, the RFC finding purporting to limit Plaintiff to "frequent handling and fingering," is not supported by substantial evidence, and the ALJ's omission of Drs. Jacobs and Giannini's diagnoses of CTS at step two cannot be excused as harmless error. Because the ALJ's RFC determination is not supported by substantial evidence, a remand is warranted.

In light of the determination that the Commissioner's decision is not supported by substantial evidence due to the ALJ's failure to consider CTS diagnoses at step two and in the RFC, the Court need not reach Plaintiff's remaining contentions. Of course, on remand, Plaintiff's claims must be evaluated in compliance with the applicable regulations and case law in all respects.

## IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance

with this opinion.

SO REPORTED and RECOMMENDED this 7th day of July, 2016, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA